**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC., a Delaware corporation; WYNDHAM VACATION RESORTS, INC.; a Delaware corporation, WYNDHAM RESORT DEVELOPMENT CORPORATION, an Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-WEST, LLC, a California limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company,<br><br>      Plaintiffs,<br><br>v.<br><br>DOMAINS BY PROXY, LLC, a Delaware limited liability company; DOE #1, an unknown individual and/or entity affiliated with the domain name <resortexitgroup.com>; DOE #2, an unknown individual or entity associated with the domain name <timesharelawteam.com>; and DOE #3, an unknown individual or entity affiliated with the domain name <247qk.com>,<br><br>      Defendants. | CASE NO.: |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc. ("WVR"); Wyndham Resort Development Corporation ("WRDC"); Shell Vacations, LLC ("SV"); SVC-West, LLC ("SVC-West"); SVC-Americana, LLC ("SVC-Americana"); and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively, "Wyndham"), by and through undersigned counsel,

and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants, Domains by Proxy, Inc. and Does #1-3 (collectively "DBP"), and state:

A.  **Introduction**

1. Wyndham is a global leader in the development of timeshare properties.

2. Wyndham has valid and binding contracts (the "Timeshare Contracts") with individuals who purchased timeshare interests from Wyndham (the "Wyndham Owners"). These Timeshare Contracts control the benefits and obligations of timeshare ownership.

3. Defendants are a group of individuals and related companies that conspire together to harm Wyndham Owners and Wyndham as described in greater detail hereinbelow. The Defendants are:

   a. Domains by Proxy, LLC, the listed Registrant of the domain names <tresortexitgroup.com>, <timesharelawteam.com>, and <247qk.com> (collectively the "Domains"); and

   b. Does #1 - 3, unknown individual(s), entity(ies), or group(s), which may be the actual beneficial owner of one or more of the Domains.

4. Defendants are not parties to the Timeshare Contracts. Yet, despite this, they falsely advertise timeshare cancellation services that purport to cancel timeshare interests and any outstanding timeshare mortgages as well.

5. Defendants' "timeshare cancellation service" provides no legal means of cancellation and is, instead, actually designed to directly cause the Wyndham Owners to stop fulfilling their payment obligations under the Timeshare Contracts, resulting in certain breach, default, and damaged credit.

6. In order to solicit Wyndham Owners, Defendants' online advertisements and website content create a false narrative that Defendants' "timeshare cancellation service" is

equivalent to legal representation or that Defendants are operating a law firm, when in fact they are not.

7. Upon information and belief, Does #2 – 10 may be affiliated with known timeshare exit companies and individuals that are currently in litigation or bankruptcy.

**B.     Parties, Jurisdiction, and Venue**

i.     The Plaintiffs

8. WVO is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

9. WVR is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

10. WRDC is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

11. SV is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

12. Plaintiff SVC-West, LLC is a limited liability company organized and existing under the laws of the state of California with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

13. Plaintiff SVC-Americana, LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

14. Plaintiff SVC-Hawaii, LLC is a limited liability company organized and existing under the laws of the state of Hawaii with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

15. WVO is the parent company or ultimate parent company of WVR, WRDC, and SV, which conducts timeshare sales and development activities throughout the United States.

### ii. The Defendants

16. Domains by Proxy, LLC is a limited liability company organized and existing under the laws of the State of Delaware. Domains by Proxy maintains an address at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

17. Does #1 - 3 are unknown individual(s), entity(ies), or group(s), which may be the actual beneficial owner of the Domains. Plaintiff does not know the true name(s) or legal capacity(ies) of the defendants sued herein as Doe # 1 - 3, and therefore sues this defendant by such fictitious name and will move to amend the Complaint should the identity(ies) of Doe #1 - 3 become known.

### iii. Subject Matter Jurisdiction

18. This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

### iv. Personal Jurisdiction

19. This Court has personal jurisdiction over the Defendants pursuant §48.193(1)(a) and §48.193(3), Fla. Stat., as Defendants are engaged in substantial and not isolated activity

within Florida, operate a business and have an office in Florida, have committed a tortious act within this state, and at least two of the co-defendants that are part of the conspiracy alleged herein are domiciled in Florida.

20. Moreover, this court has personal jurisdiction over all defendants as they have engaged in tortious activities directed against Wyndham, which is located in, and has its principal place of business in, Florida, and which suffers harm in Florida.

21. The exercise of personal jurisdiction over defendants would not offend the traditional notions of fair play and substantial justice.

<u>v.</u>   <u>Venue</u>

22. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, and a portion of Defendants' conduct giving rise to the claims set forth herein (specifically, both their marketing activities and their repeated sending of letters to Wyndham in Orlando, Florida) occurred in this District.

<u>vi.</u>   <u>Conditions Precedent, Attorney's Fees</u>

23. All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

24. Wyndham has retained the services of the undersigned lawyers to represent it in this matter and have obligated themselves to pay reasonable attorneys' fees, which fees are recoverable against Defendants pursuant to 15 U.S.C. § 1117 and Fla. Stat. § 501.2105.

**C.   Wyndham's Timeshare Business**

25. Wyndham devotes substantial resources to advertising and other marketing promotions in an effort to maintain and enhance the value of their established and famous brands.

26. As part of its business, WVR, WRDC and SV enter into valid and binding Timeshare Contracts with Wyndham Owners. At the time that Wyndham Owners purchase timeshares from WVR, WRDC, SV, SVC-West, SVC-Americana, and/or SVC-Hawaii, the Wyndham Owners execute Contracts for Purchase and Sale wherein the Wyndham Owners agree to pay an amount certain for the timeshare interest, as well as maintenance and/or annual fees for the upkeep of the timeshare units and common areas of the timeshare properties. In addition, Wyndham Owners agree to pay a pro-rated share of the property taxes, which is then submitted to the appropriate local tax collectors. Often, if a purchaser desires mortgage financing, they may apply for a mortgage, and after approval, may execute a Promissory Note and Mortgage, which are referenced and incorporated in the Purchase Agreement. These Timeshare Contracts are legally binding contracts and, after the passage of a statutory rescission period, cannot be unilaterally rescinded without Wyndham's express agreement.

27. Recognizing that some Wyndham Owners may desire to gracefully exit their timeshare obligations, or may have a need to do so, Wyndham has created the Ovation program, which allows Wyndham Owners to terminate their Timeshare Contracts if they meet certain conditions.

### D. Defendants' Scheme

28. Defendants falsely and misleadingly advertise a 'guaranteed' ability to 'terminate' or 'cancel' timeshare contracts, including the Timeshare Contracts, on behalf of consumers, including Wyndham Owners.

29. Defendants possess no such ability.

30. Instead, what Defendants do is take large, up-front fees from consumers and then do little or nothing on their behalf other than directing the consumer to stop making payments to their timeshare developers, eventually causing the consumer to default on their timeshare obligations, resulting in foreclosure and substantial harm to the consumer and the timeshare developer.

31. Defendants advertise that they have helped "thousands" of consumers, even though the websites at issue were only recently created. Such an advertisement is false and/or misleading because it is untrue and impossible for such a new company to have helped "thousands" of consumers.

32. Defendants also include a number of "client testimonials" on their website. Upon information and belief, those client testimonials are false and/or misleading because they are either not real consumers or are testimonials for a company other than Defendants.

33. Defendants also advertise that they will get a Wyndham Owner out of their timeshare "legally and forever". This advertisement is false and/or misleading because Defendants have no such process or ability and they consider "legally and forever" to include a foreclosure of a Wyndham Owner's mortgage, which no rational Wyndham Owner would ever pay Defendants for as they could accomplish the same result on their own (by simply not making payments to Wyndham).

34. Once a consumer, including Wyndham Owners, is 'hooked' by Defendants' false and/or misleading advertising, the Marketing Arm Defendants will enter into a contract with the consumer, including Wyndham Owners, for the provision of Defendants' fraudulent and illusory services. The consumer, including Wyndham Owners, are generally charged extraordinary

amounts of money – in the thousands or tens-of-thousands of dollars – which money is split amongst the various Defendants.

35. The False and Misleading Advertisements (set forth in paragraphs 31, 31, and 32 above) have the capacity to deceive, and indeed have deceived the consuming public, including Wyndham Owners. The False and Misleading Advertisements materially misrepresent the "services" offered by Defendants.

### COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(Against DBP)

36. Wyndham adopts and realleges paragraphs 1 through 35 as if fully set forth herein.

37. This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

38. DBP willfully, deliberately, and egregiously made false or misleading statements of fact in its commercial advertisements and intended to mislead consumers. The statements described above and incorporated herein, more specifically the False and Misleading Advertisements, were literally false, either on their face or by necessary implication, as set forth hereinabove.

39. The False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for DBP's own financial gain, for the purpose of influencing consumers (including Wyndham Owners) to retain their services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry

40. The False and Misleading Advertisements either deceived or had the capacity to deceive a substantial segment of the consuming public.

41. Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham

42. Defendants' advertised services affect interstate commerce.

43. Defendants are operating as competitors to Wyndham. Once a Wyndham Owner enters into an agreement with DBP and/or Doe #2, the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of DBP.

44. Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

45. Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

46. Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

### COUNT II
**Tortious Interference with Contractual Relations**
(Against All Defendants)

47. Wyndham adopts and realleges paragraphs 1 through 35 as if fully set forth herein.

48. This is a cause of action for tortious interference with contractual relations against Defendants.

49. Wyndham has contractual relationships with Wyndham Owners through the Timeshare Contracts.

50. Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Wyndham and the Wyndham Owners. The very fact that Wyndham have a business relationship with the Wyndham Owners is the basis upon which Defendants sought to establish a relationship with the Wyndham Owners. Indeed, if it were not for the existence of the contractual relationships between Wyndham and the Wyndham Owners, Defendants would have no reason to market their "timeshare cancellation service".

51. Defendants, through various inter-related entities as described hereinabove, have successfully solicited Wyndham Owners and caused or induced them to breach and/or terminate their contractual relationships with WVR, WRDC, and/or SV.

52. In particular, Defendants have intentionally procured the breach of Wyndham's contractual relationships by soliciting Wyndham Owners and persuading them to hire Defendants to help "cancel" (in reality, breach) their Timeshare Contracts. Defendants also procure breaches by directly instructing Wyndham Owners to stop paying their timeshare loans and maintenance fees and/or engaging in improper transfers.

53. If Wyndham Owners knew the truth about Defendants' illusory services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to Defendants nor unlawfully terminate (through breach resulting in foreclosure) their timeshare interests.

54. Defendants have utilized improper and/or illegal means to interfere with Plaintiffs' contractual relations.

55. Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Wyndham or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

56. As a direct and proximate result of Defendants' intentional misconduct, Wyndham Owners have terminated, or have baselessly sought to terminate, their contractual relationships with Plaintiffs and, more specifically, WVR, WRDC, and/or SV, before the expiration of the terms of those contracts. These terminations, and attempted terminations, also interfere with Wyndham's ability to enter into subsequent transactions with those same Wyndham Owners.

57. Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as Defendants are strangers to the contractual relationships between Wyndham and its Owners, and their interference with Wyndham's business is willful and malicious.

58. Furthermore, Defendants profit greatly by advertising their "timeshare cancellation service" as legal representation and thereby receiving significant "fees" from Wyndham Owners.

59. As a direct and proximate result of the foregoing, Plaintiffs suffered economic damages arising from Wyndham Owners' default of their payment obligations under the Timeshare Contracts.

60. Plaintiffs are entitled to damages against all Defendants jointly and severally.

61. Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Wyndham in the disruption of customer and other contractual relations; therefore, Wyndham does not have an adequate remedy at law.

62. Defendants' conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages

### COUNT III
**Violation of Florida's Deceptive and Unfair Trade Practices Act – Injunctive Relief Only**
(Against All Defendants)

63. Wyndham adopts and realleges paragraphs 1 through 35 as if fully set forth herein.

64. This is a cause of action for violation of §501.201 et seq., Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

65. DBP, by advertising, soliciting, offering, and providing its timeshare cancellation scheme to timeshare customers, are engaged in "trade or commerce" as defined under §501.203(8), Fla. Stat

66. DBP have intentionally engaged in deceptive and unfair trade practices in violation of §501.204(1), Fla. Stat. by soliciting Wyndham Owners through false and misleading advertising and marketing materials, including but not limited to, the False Advertisements.

67. Defendants have willfully engaged in said practices for their own commercial advantage when they knew that such practices were unfair, misleading, false, and/or deceptive to Wyndham and Wyndham's Owners.

68. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Wyndham has suffered economic losses.

69. Wyndham's losses will increase unless Defendants are permanently enjoined from continuing their deceptive and unfair business practices.

70. Wyndham is entitled to recover its attorney's fees and costs from Defendants under Sections 501.2105 and 501.211, Fla. Stat.

## **Prayer for Relief**

Wherefore, Wyndham respectfully requests the Court enter Final Judgment in its favor and against the Defendants, jointly and severally, for the following:

a) preliminary injunctive relief as to Counts I through IV;

b) permanent injunctive relief as to Counts I through III;

c) actual damages as to Counts I and II only, including, without limitation, disgorgement of profits;

d) corrective advertising;

e) treble damages as to Count I;

f) attorneys' fees;

g) costs;

h) pre- and post- judgment interest; and

i) such other and further relief as the Court deems appropriate.

Dated: June 13, 2019

/s/ *Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**MICHAEL L. GORE, ESQ.**
Florida Bar No. 441252
mgore@shutts.com
**MARY RUTH HOUSTON, ESQ.**
Florida Bar No. 834440
mhouston@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

and

**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (561) 650-8518
Facsimile: (561) 822-5527

*Attorneys for Plaintiffs*

WPBDOCS 10014849 2